1  STEVEN H. BERGMAN (S.B. #180542)
   RICHARDS BRANDT MILLER NELSON
2  111 E. Broadway, Suite 400
   Salt Lake City, Utah 84111
3  Telephone: (801) 531-2000
   Facsimile: (801) 532-5506
4  steven-bergman@rbmn.com
   *Attorneys for Plaintiffs*
5  *Double Coin Tyre Group, Ltd. and*
   *China Manufacturers Alliance LLC*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| DOUBLE COIN TYRE GROUP LTD, a Chinese corporation, and CHINA MANUFACTURERS ALLIANCE LLC, a California limited liability company,<br><br>Plaintiffs<br><br>v.<br><br>MAXON INTERNATIONAL CO., LIMITED, a Chinese corporation, and TRIMAX TIRE CORP., a California Corporation,<br><br>Defendants. | Case No.:<br><br>**Complaint for:**<br>**1) Trademark Infringement;**<br>**2) Trademark Counterfeiting;**<br>**3) Trademark Dilution;**<br>**4) False Advertising; &**<br>**5) Unfair Competition**<br><br>**Jury Demand** |

COMPLAINT

## Complaint

Plaintiffs Double Coin Tyre Group Ltd., a Chinese corporation, and China Manufacturers Alliance LLC, a California limited liability company, by and through counsel of record, Steven H. Bergman of RICHARDS BRANDT MILLER NELSON, complains as follows against Defendants Maxon International Co., Limited and Trimax Tire Corp.

## Parties, Jurisdiction, and Venue

1. Plaintiff Double Coin Tyre Group Ltd. ("DCTG") is a Chinese corporation with a principal place of business in Shanghai, China.

2. Plaintiff China Manufacturers Alliance LLC ("CMA") is a California limited liability company with a principal place of business in Monrovia, California.

3. Defendant Maxon International Co., Limited ("Maxon") is a Chinese corporation whose principal place of business is in Qingdao, China. Maxon is in the business of selling automotive tires.

4. Defendant Trimax Tire Corp. ("Trimax") is a California corporation whose principal place of business is at 335 N Puente St, Brea, California 92821. Trimax is a wholly owned subsidiary of Maxon.

5. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1331, as Plaintiffs assert claims under the Lanham Act, 15 U.S.C. § 1051 *et seq.* and the district courts have original jurisdiction of all civil actions arising under the laws of the United States.

6. This Court has personal jurisdiction over Defendant Trimax as Defendant Trimax maintains a principal place of business in Brea, California, and is thus subject to the jurisdiction of this Court.

7. This Court has personal jurisdiction over Defendant Maxon as such Defendant committed acts from which this lawsuit arises within the State of California.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as Defendant Trimax maintains a place of business in Brea, California, which is within the territorial limits of this Court and because a substantial part of the events giving rise to Plaintiffs' claims occurred within the territorial limits of this Court.

**General Allegations**

9. DCTG is a seller of medium and heavy-duty truck and bus tires and off-the-road tires, including tires sold under the "Double Coin" name, that are manufactured by affiliates of DCTG.

10. DCTG sells medium and heavy-duty truck and bus tires and off-the-road tires under the Double Coin name to distributors in China and internationally to distributors who purchase DCTG's tires in China or Thailand.

11. Plaintiff CMA is a distributor of Double Coin tires and has been the exclusive importer of Double Coin tires into the United States and other North American countries for more than twenty-five years.

12. CMA purchases Double Coin tires from DCTG or its affiliates in China or Thailand, and CMA imports the tires into the United States.

13. CMA sells Double Coin tires in the United States to distributors, tire chains, and other tire dealers.

14. DCTG is the registered owner of two federal trademarks, Registration Nos. 1,363,253 (the "253 Trademark") and 3,335,547 (the "547 Trademark") for use of the "Double Coin" name on the sale of tires.

15. The 253 Trademark includes both the use of the name "Double Coin" on tires and the use of the Double Coin symbol:



16. The 547 Trademark includes the use of the name "Double Coin" on tires in the following form:

**DOUBLE COIN**

17. CMA is the registered owner of one federal trademark, Registration No. 4,493,760 (the "760 Trademark") for the use of the phrase "The Smart Money is on Double Coin" in connection with the sale of Double Coin tires.

18. In addition, CMA is authorized to use the 253 Trademark and the 547 Trademark in the United States and to enforce and protect both marks.

### The Gray Market Double Coin Tires

19. In the latter part of 2020, CMA began receiving reports from its customers that someone was offering Double Coin tires at steep discounts from the prices being charged by CMA to its customers.

20. Some of CMA's customers provided CMA with the name and contact information of one of the people offering Double Coin tires for sale at steep discounts.

21. CMA, through one of its salespeople, contacted that person offering Double Coin tires at steep discounts and learned that the person was working for or with CTR Import & Export ("CTR Import").

22. CMA's salesperson then arranged to purchase a Double Coin RR680 tire from CTR Import.

23. CMA's salesperson also asked CTR Import about Double Coin RLB900 tires and was told by the CTR Import representative that CTR Import had a container of RLB900 tires off the coast of Long Beach waiting to be unloaded, and they would be able to sell those tires soon.

24. After receiving the tire from CTR Import, the third party delivered the tire to CMA for inspection and examination. The inspection revealed that the tire had a DOT manufacturer code consistent with DCTG's Thai manufacturing affiliate and had the registered Double Coin logo contained in the 547 Trademark.

25. In addition to the DOT Code, every Double Coin tire sold in the U.S. contains a unique serial number. That serial number provides additional information to DCTG and its affiliates regarding when the tire was manufactured, and to whom it was sold.

26. The unique serial number on the Double Coin tire that CMA arranged to purchase from CTR Import indicated that DCTG's Thai affiliate had manufactured the tire and then sold it to a company in Vietnam named Sinhphuc Trading Co., Ltd. for use in Vietnam and other Southeast Asian countries. DCTG's Thai affiliate did not give Sinhphuc Trading permission to export the tire to the United States.

27. Because the tire that CMA arranged to purchase from CTR Import was not imported into the U.S. through proper channels, i.e., by CMA, and is not authorized for sale in the U.S. by the manufacturer, in this case, DCTG's Thai affiliate, the tire is what is referred to as a "gray market" tire. The same is true for the alleged container of Double Coin RLB900 tires that CTR Import has apparently improperly brought into the United States.

28. CTR Import is not an authorized seller of Double Coin tires. CMA has never sold Double Coin tires to CTR Import.

29. Accordingly, CMA filed a trademark infringement action against CTR Import for its sale of "gray market" Double Coin tires in a case styled *Double Coin Tyre Group, Ltd. v. CTR Import & Export*, Case No. 5:21-cv-00745-JWH (SPx) (C.D. Cal.)

30. DCTG and CMA's Motion for Default Judgment against CTR Import in the 2021 trademark infringement action is pending.

31. In December 2023, CMA was served with a subpoena on behalf of CTR Import to testify at trial in an action that Maxon filed against CTR Import for failure to pay Maxon for Double Coin tires that Maxon sold to CTR Import. *See*

*Maxon Int'l Co., Ltd. v. CTR Import & Export*, Case No. CIV SB2115657 (San Bernardino Super. Ct.)

32. In reviewing the Complaint and discovery documents in the *Maxon v. CTR Imoport* action, CMA learned that Maxon and/or Trimax apparently imported and sold 12,575 gray market Double Coin tires to CTR Import. Neither Maxon nor Trimax are authorized sellers of Double Coin tires in the United States.

33. Plaintiffs are informed and believe that the gray market Double Coin tires that Maxon and/or Trimax sold to CTR Import were marketed as the same as the Double Coin tires that CMA imports and sells.

34. The tires, however, were not the same. CMA provides a warranty on every Double Coin tire that CMA imports into the United States (the "CMA Warranty"). The gray market Double Coin tires that were sold by Maxon and/or Trimax do not contain or include the CMA Warranty.

35. Similarly, the gray market Double Coin tires sold by Maxon or Trimax would not be covered by CMA's product liability insurance.

36. DCTG and CMA take steps to prevent the sale of the gray market Double Coin tires, as the gray market Double Coin tires infringe the DCTG and CMA trademarks and harm the reputation of Double Coin tires and CMA.

37. Thus, when DCTG and/or CMA learn of the sale of grey market Double Coin tires, they take steps to prevent further sales, through both cease and desist letters and the filing of trademark infringement suits to protect the DCTG and CMA trademarks.

38. DCTG and CMA are concerned that the gray market Double Coin tires that Maxon and/or Trimax sold CTR Import could lead to regulatory, or liability claims against CMA. As CMA is the authorized, and exclusive, importer of Double Coin tires, regulatory officials or parties claiming injury as a result of a Double Coin tire typically contact or pursue CMA. This would likely occur with the gray

1 market tires that Maxon and/or Trimax sold to CTR Import, even though CMA did
2 not import those tires into the United States.
3     39.    DCTG and CMA are also concerned that, by selling Double Coin tires
4 illegally to CTR Import, Maxon and Trimax are interfering with CMA's
5 distribution channels for Double Coin tires and tarnishing the Double Coin brand.

## First Cause of Action

### (Trademark Infringement, 15 U.S.C. § 1114)

8     40.    Plaintiffs incorporate Paragraphs 1 through 39 of this Complaint by
9 reference as if stated herein.
10     41.    Plaintiff DCTG owns two trademarks regarding Double Coin tires –
11 the 253 Trademark which includes the two coin symbol and the use of the name
12 "Double Coin" on tires, and the 547 Trademark, which includes the use of the name
13 "Double Coin" on tires.
14     42.    Both trademarks were properly issued by the U.S. Patent and
15 Trademark Office, and both trademarks are valid, protectable marks.
16     43.    Defendants Maxon and Trimax misused the Double Coin marks by
17 selling and offering for sale tires that contained the "Double Coin" name as well as
18 the logo set forth in the 547 Trademark.
19     44.    Defendants Maxon and Trimax did not have the consent of DCTG, the
20 trademark owner, or CMA, the exclusive importer of Double Coin tires, to use the
21 Double Coin trademarks, including the 243 Trademark and the 547 Trademark, or
22 market or sell Double Coin tires.
23     45.    Defendants Maxon and Trimax's use of the Double Coin marks was
24 done in such a manner that it likely caused confusion among ordinary consumers as
25 to the source, sponsorship, affiliation, or approval of the goods. Among other
26 things:
27     a.    The Double Coin marks are strong trademarks. CMA has been
28         importing and selling Double Coin tires in the U.S. for more than

twenty-five years and Double Coin tires are one of the leading brands of medium and heavy-duty truck and bus tires on the market;

b. Defendants Maxon and Trimax are using the Double Coin trademarks on the same goods, i.e., medium and heavy-duty truck and bus tires;

c. The marks on the gray market tires are the same as the Double Coin trademarks;

d. Defendants Maxon and Trimax created, or attempted to create actual confusion, claiming the gray market tires were the same as Double Coin tires, even though the tires Maxon and Trimax sold were not backed by the CMA warranty;

e. Defendants Maxon and Trimax used DCTG's trademarks and derived benefit from the reputation of DCTG's trademarks; and

f. Defendants Maxon and Trimax sold the gray market Double Coin tires in the same markets that CMA sells Double Coin tires and contacted CMA customers to sell gray market Double Coin tires.

46. Defendants Maxon's and Trimax's actions are intentional and willful. Indeed, Maxon has admitted in the *Maxon v. CTR Import* action that Maxon sold 12,574 gray market Double Coin tires to CTR Import.

47. Neither Maxon nor Trimax can provide any documents or information to show they were authorized to import or sell Double Coin tires in the United States, as neither one is or was an authorized importer or distributor of Double Coin brand tires.

48. Defendants Maxon's and Trimax's infringement of the DCTG marks has caused damage to DCTG and CMA.

49. Accordingly, DCTG and/or CMA are entitled to recover for the injury to or loss of reputation, goodwill, general business reputation, lost profits, the

1  expense of preventing customers from being deceived, and corrective advertising
2  reasonably required to correct any public confusion caused by Defendants Maxon's
3  and Trimax's infringement.
4      50.    In addition to actual damages, Plaintiffs are entitled to any profits
5  earned by Defendants Maxon and Trimax that are attributable to the infringement.
6      51.    Plaintiffs are also entitled to an injunction prohibiting further
7  infringement by Defendants Maxon and Trimax, and an order that Defendants
8  Maxon and Trimax turn over any and all infringing gray market Double Coin tires
9  in their possession, custody, or control, in addition to any records regarding the
10 prior sale of gray market Double Coin tires.

## Second Cause of Action

### (Trademark Counterfeiting – 15 U.S.C. § 1116(d))

13     52.    Plaintiffs incorporate Paragraphs 1 through 51 of this Complaint by
14 reference as if stated herein.
15     53.    Plaintiff DCTG owns two trademarks regarding Double Coin tires –
16 the 253 Trademark which includes the two coin symbol and the 547 Trademark
17 which includes the use of the name "Double Coin" on tires.
18     54.    Both trademarks were properly issued by the U.S. Patent and
19 Trademark Office, and both trademarks are valid, protectable marks.
20     55.    Defendants Maxon and Trimax misused the Double Coin marks by
21 selling and offering for sale tires that contained the "Double Coin" name as well as
22 the logo set forth in the 547 Trademark.
23     56.    Defendants Maxon and Trimax did not have the consent of DCTG, the
24 trademark owner, or CMA, the exclusive importer of Double Coin tires, to use the
25 Double Coin trademarks, including the 243 Trademark and the 547 Trademark, or
26 market or sell Double Coin tires.
27     57.    Defendants Maxon's and Trimax's use of the Double Coin trademarks
28 in the manner set forth above constitutes counterfeiting under 15 U.S.C. § 1116(d)

in that the marks used by Maxon and Trimax are identical to a mark that is registered on the principal register in the U.S.P.T.O. for the sale of medium and heavy-duty truck and bus tires and the marks used by Defendants Maxon and Trimax are a designation that is substantially indistinguishable from the Double Coin trademarks.

58. Defendants Maxon's and Trimax's actions were intentional and willful, as Maxon has admitted in the *Maxon v. CTR Import* case that Maxon and/or Trimax have imported and sold 12,574 gray market Double Coin tires.

59. Neither Maxon nor Trimax can provide any documents or information to show they were authorized to import or sell Double Coin tires in the United States, as neither Defendant is or was authorized to import or sell Double Coin tires in the United States.

60. Defendants Maxon's and Trimax's counterfeiting of the DCTG marks has caused damage to DCTG and CMA.

61. Accordingly, DCTG and/or CMA are entitled to recover for the injury to or loss of reputation, goodwill, general business reputation, lost profits, the expense of preventing customers from being deceived, and corrective advertising reasonably required to correct any public confusion caused by Defendants Maxon's and Trimax's infringement.

62. In addition to actual damages, Plaintiffs are entitled to any profits earned by Defendants Maxon and Trimax that are attributable to the infringement.

63. Plaintiffs may also be entitled to treble damages, or, alternatively, statutory damages of between $1,000 and $200,000 for each gray market Double Coin tire that Maxon and/or Trimax importer and sold in the United States.

64. Plaintiffs are also entitled to an injunction prohibiting further infringement by Defendants Maxon and Trimax, and an order that Defendant Maxon and Trimax turn over any and all infringing gray market tires in their

possession, custody, or control along with any records regarding the sale of the gray market tires.

### Third Cause of Action

### (Trademark Dilution – 15 U.S.C. § 1125©)

65. Plaintiffs incorporate Paragraphs 1 through 64 of this Complaint by references as if stated herein.

66. Plaintiff DCTG owns two trademarks regarding Double Coin tires – the 253 Trademark which includes the two coin symbol and the 547 Trademark which includes the use of the name "Double Coin" on tires.

67. Both trademarks were properly issued by the U.S. Patent and Trademark Office, and both trademarks are valid, protectable marks.

68. Defendants Maxon and Trimax misused the Double Coin marks by selling and offering for sale tires that contained the "Double Coin" name as well as the logo set forth in the 547 Trademark.

69. Defendants Maxon and Trimax did not have the consent of DCTG, the trademark owner, or CMA, the exclusive importer of Double Coin tires, to use the Double Coin trademarks, including the 243 Trademark and the 547 Trademark, or market or sell Double Coin tires.

70. The Double Coin trademarks are widely recognized in connection with the sale and distribution of medium and heavy-duty truck and bus tires and are associated with Plaintiffs DCTG and CMA.

71. CMA uses the Double Coin marks throughout the U.S. and has done so for more than twenty-five years and makes substantial sales of truck and bus tires using the Double Coin trademarks.

72. Defendants Maxon's and Trimax's infringement of the Double Coin trademarks constitutes "dilution by blurring" in that Defendants Maxon and/or Trimax's sale of the gray market Double Coin tires impairs the distinctiveness of the Double Coin trademarks. Among other things:

    a. Defendants Maxon's and Trimax's gray market tires have the same mark as the Double Coin trademarks;

    b. The Double Coin trademarks have acquired distinctiveness with respect to the sale and distribution of medium and heavy-duty truck and bus tires;

    c. Plaintiff DCTG's affiliates are the only manufacturers of Double Coin tires, and Plaintiff CMA is the exclusive U.S. importer of Double Coin tires;

    d. The Double Coin trademarks are well-recognized; and

    e. Defendants Maxon and Trimax intended to create an association with the Double Coin trademarks.

73. Defendants Maxon's and Trimax's infringement also constitutes "dilution by tarnishment" as the marks on the gray market Double Coin tires were identical to the Double Coin trademarks, but the gray market Double Coin tires marketed and sold by Maxon and Trimax are not backed by the CMA warranty.

74. To prevent ongoing dilution of the Double Coin trademarks, Plaintiffs are entitled to an injunction prohibiting further infringement by Defendants Maxon and Trimax, and an order that Defendant Maxon and Trimax turn over any and all infringing gray market tires in their possession, custody, or control along with any records regarding the sale of the gray market tires.

75. DCTG and/or CMA are entitled to recover for the injury to or loss of reputation, goodwill, general business reputation, lost profits, the expense of preventing customers from being deceived, and corrective advertising reasonably required to correct any public confusion caused by Defendants Maxon and Trimax's infringement.

76. In addition to actual damages, Plaintiffs are entitled to any profits earned by Defendants Maxon and Trimax that are attributable to the infringement.

COMPLAINT

## Fourth Cause of Action

### (False Advertising – 15 U.S.C. 1125(a))

77. Plaintiffs incorporate Paragraphs 1 through 76 of this Complaint by reference as if stated herein.

78. Plaintiff DCTG owns two trademarks regarding Double Coin tires – the 253 Trademark which includes the two coin symbol and the 547 Trademark which includes the use of the name "Double Coin" on tires.

79. Both trademarks were properly issued by the U.S. Patent and Trademark Office, and both trademarks are valid, protectable marks.

80. Defendants Maxon and Trimax made false or misleading statements of fact in a commercial advertisement about the gray market tires, claiming they were exactly the same as Double Coin tires, even though the gray market Double Coin tires are different in that they are not backed by the CMA warranty.

81. Defendants Maxon's and Trimax's statements either deceived or had the capacity to deceive a substantial segment of potential consumers.

82. Defendants Maxon's and Trimax's deception is material, in that it is likely to influence a truck tire buyer's purchasing decision.

83. Defendants Maxon and Trimax sold the gray market tires in interstate commerce by advertising the gray market tires using interstate communication methods.

84. Plaintiffs have been or are likely to be injured as a result of Defendants Maxon's and Trimax's false statements.

85. Accordingly, DCTG and/or CMA are entitled to recover for the injury to or loss of reputation, goodwill, general business reputation, lost profits, the expense of preventing customers from being deceived, and corrective advertising reasonably required to correct any public confusion caused by Defendants Maxon's and Trimax's false advertising.

86. In addition to actual damages, Plaintiffs are entitled to any profits earned by Defendants Maxon and Trimax that are attributable to the false advertising.

87. Plaintiffs are also entitled to an injunction prohibiting further false advertising by Defendants Maxon and Trimax.

## Fifth Cause of Action

### (Unfair Competition – 15 U.S.C. § 1125)

88. Plaintiffs incorporate Paragraphs 1 through 87 of this Complaint by reference as if stated herein.

89. Plaintiff DCTG owns two trademarks regarding Double Coin tires – the 253 Trademark which includes the two coin symbol and the 547 Trademark which includes the use of the name "Double Coin" on tires.

90. Both trademarks were properly issued by the U.S. Patent and Trademark Office, and both trademarks are valid, protectable marks.

91. Defendants Maxon and Trimax misused the Double Coin marks by selling and offering for sale tires that contained the "Double Coin" name as well as the logo set forth in the 547 Trademark.

92. Defendants Maxon and Trimax did not have the consent of DCTG, the trademark owner, or CMA, the exclusive importer of Double Coin tires, to use the Double Coin trademarks, including the 243 Trademark and the 547 Trademark, or market or sell Double Coin tires.

93. Defendants Maxon's and Trimax's misuse of the Double Coin trademarks constitutes unfair competition under the Lanham Act.

94. Plaintiffs have been or are likely to be injured as a result of Defendants Maxon and Trimax's unfair competition.

95. Accordingly, DCTG and/or CMA are entitled to recover for the injury to or loss of reputation, goodwill, general business reputation, lost profits, the expense of preventing customers from being deceived, and corrective advertising

reasonably required to correct any public confusion caused by Defendants Maxon's and Trimax's unfair competition.

96. In addition to actual damages, Plaintiffs are entitled to any profits earned by Defendants Maxon and Trimax that are attributable to the unfair competition.

97. Plaintiffs are also entitled to an injunction prohibiting further unfair competition by Defendants Maxon and Trimax.

## Prayer for Relief

WHEREFORE, Plaintiffs pray as follows:

A. For entry of Judgment in favor of Plaintiffs and against Defendants;

B. For damages to compensate Plaintiffs for the injury to or loss of reputation, goodwill, general business reputation, lost profits, the expense of preventing customers from being deceived, and corrective advertising reasonably required to correct any public confusion caused by Defendants Maxon and Trimax;

C. For Defendants' profits attributable to Defendants' infringement, counterfeiting, dilution, false advertising, and unfair competition;

D. For treble damages arising from Defendants' counterfeiting;

E. Alternatively, for statutory damages arising from Defendants' counterfeiting in an amount of $1,000 to $200,000 per gray market tire sold by Defendants;

F. For an injunction prohibiting further infringement, counterfeiting, dilution, false advertising and/or unfair competition by Defendants;

G. For an order that Defendants turn over any and all infringing gray market tires in their possession, custody, or control along with any record regarding the sale of the gray market tires;

H. For attorneys' fees and costs of suit; and

I. For such further or other relief as the Court deems proper.

Dated: January 25, 2024          Respectfully submitted,

RICHARDS BRANDT MILLER NELSON

*s/ Steven H. Bergman*
Steven H. Bergman

*Attorney for Plaintiffs*

# Jury Demand

Plaintiffs Double Coin Tyre Group, Ltd. and China Manufacturers Alliance LLC, by and through counsel of record, and pursuant to Rule 38(b) of Federal Rules of Civil Procedure, demand a jury on all matters triable to a jury.

Dated: January 26, 2024   Respectfully submitted,

RICHARDS BRANDT MILLER NELSON

*s/ Steven H. Bergman*
Steven H. Bergman

*Attorney for Plaintiffs*

18932/00071FC3313.DOCX